1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9
10
11
12
13
14
15
16

| | |
|---|---|
| MIDLAKES ASSOCIATION, a Washington non-profit corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, an Illinois company,<br><br>                              Defendant. | NO.<br><br>**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH, NEGLIGENCE, IFCA AND CPA VIOLATIONS** |

17      Plaintiff Midlakes Association (the "Association") alleges as follows:

18                    **I.      INTRODUCTION**

19      1.1      This is an action for declaratory judgment and monetary damages, seeking:

20
21      (A)      A declaration of the rights, duties and liabilities of the parties with respect to certain controverted issues under insurance policies issued to the Association.

22
23      (B)      Monetary damages for breach of contract, insurance bad faith, IFCA violations, CPA violations and negligence.

      (C)      CPA penalties of up to $25,000 per violation.
24
25      (D)      Attorneys' fees, expert witness fees, and costs.

26
27

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 1

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

(E)     An award of IFCA damages pursuant to RCW 48.30.015 to increase the total award of damages to an amount not to exceed three times the actual damages.

(F)     Any other relief the Court deems just and equitable.

## II.     PARTIES AND INSURANCE CONTRACTS

2.1     <u>The Association</u>. The Association is a nonprofit corporation organized under the laws of the state of Washington with its principal place of business located in Bellevue, Washington. The Association is a condominium association.  The Association has the duty to maintain the common elements and any limited common elements of the Midlakes Condominium for the common enjoyment of the unit owners. The Midlakes Condominium consists of four (4) residential buildings with a total of sixty (60) units, located at 12107 NE Bellevue-Redmond Road, in Bellevue, Washington 98005.

2.2     <u>Allstate.</u> Allstate Insurance Company ("Allstate") is an Illinois company and is registered and authorized to sell insurance in the State of Washington. Allstate sold insurance policies to the Association, including Policy No. 050912916 (in effect from October 20, 1983 to October 20, 1986) and Policy No. 050476562 (in effect from November 1, 1990 to November 1, 2004). The Allstate policies identify the Midlakes Condominium Complex as covered property.

2.3     Allstate covered the Midlakes buildings for seventeen years.  For all seventeen years the Allstate policies were written using Allstate's "customizer" form.  The customizer form covers water damage to sheathing and framing in the exterior walls of a condominium building caused by any combination of weather conditions (including rain and wind-driven rain) and inadequate construction.  None of the endorsements in any policy year eliminate coverage for such water damage.  Thus, Allstate's policies provide coverage in all seventeen policy periods for such water damage from any combination of weather conditions (including rain and wind-driven rain) and inadequate construction.

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 2

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

2.4     In addition, from October 1983 to October 1985 Allstate's policies also included an endorsement that extended coverage for damage caused by rain entering through openings in the roof or walls.

### III.     JURISDICTION AND VENUE

3.1     <u>Jurisdiction</u>.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

3.2     <u>Venue</u>.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Allstate marketed and sold insurance to the Association in King County; a substantial part of the events giving rise to the claim, including the breach of contract, occurred in King County; and the insured condominium buildings are located in King County.

### IV.     FACTS

4.1     <u>Incorporation by Reference</u>. The Association re-alleges the allegations of paragraphs 1.1 through 3.2, above, as if fully set forth herein.

4.2     <u>Background and Discovery of Hidden Water Damage.</u>  Midlakes was originally constructed in 1978.  In July, 2010, the Association's consultant, Construction Decisions, Inc. ("CDI"), investigated the buildings and determined that "moisture entering the building behind the siding has caused a great deal of deterioration of the gypsum board sheathing."  CDI explained to the Association's property manager that "the gypsum sheathing is really getting saturated, which affects its strength and its fire resistivity properties.  This has been going on since the complex was built."  CDI's report includes moisture meter readings demonstrating that it found wet sheathing and framing during the 2010 investigation. CDI recommended removing all of the siding in order to repair the damaged sheathing.

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 3

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

4.3     First Tender to Allstate.  In March 2011, the Association tendered a claim to Allstate for the damage described in the CDI report.  The Association provided Allstate with a copy of the CDI report and asked Allstate to investigate for any damage covered by Allstate's policies.

4.4     Tolling Agreement with Allstate.  Effective March 11, 2011, the Association and Allstate entered into a tolling agreement to toll contractual suit limitations clauses and statutory limitations periods for all claims relating to or arising from any contract of insurance between the Association and Allstate.  By its terms the agreement remained in effect until terminated.  Either party could terminate the tolling agreement on thirty-days written notice.

4.5     Joint Investigation.  In June 2011, the Association's engineer, Robb Dibble of Dibble Engineers, and Allstate's engineers, Ryan Barrett and Mark Uchimura of Pacific Engineering Technologies ("PET"), conducted a joint intrusive investigation at Midlakes.

4.6     Allstate Reviews the Association's Files.  In June and July 2011, Allstate requested access to the Association's files regarding maintenance and repairs.  On August 25, 2011, the Association invited Allstate to review all of its historic files at the office of its property manager.  In 2011 or 2012 a representative of Allstate reviewed the Association's files and placed red tabs on the documents that it had selected to be copied.

4.7     Dibble Engineering Report.

On November 2, 2011, Mr. Dibble issued his report to the Association.  Mr. Dibble reported that:

> At all but two openings, Dibble Engineers observed corroded fasteners, crumbling and decomposing GWB, delaminating GWB paper, and/or indications of structural shear wall damage.  The representative sample of openings and the consistency of our findings indicate that the damage is pervasive through the condominium complex.

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 4

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

4.8    PET Report.  On November 18, 2011, PET issued its report to Allstate.  In the

report, Mr. Uchimura provided "opinions" that:

> . . . [T]he deteriorated condition of the GSB and the stains and/or light decay
> on the framing is a result of long-term exposure to moisture intrusion through
> joints/gaps in the outside building corners of the wood siding assembly. . . .

> . . . [E]arly in the life of the subject buildings, the absence of sealant joints or
> the failure of existing sealant joints between the trim and siding allowed
> moisture to penetrate the exterior cladding and come into contact with the
> underlying GSB sheathing. . . .

> It is our understanding that the maintenance records for the condominium
> complex have been requested from the homeowner's association.  The
> information contained in the maintenance records may provide insight on the
> events that allowed the moisture intrusion and we have deferred final
> calculation of the timing of damage until after we have had an opportunity to
> review the subject maintenance records.  (emphasis added)

4.9    Allstate's Initial Claim Decision. On February 13, 2012, Allstate's attorney, Robert

Riede, wrote a letter to the Association's attorney, Greg Harper, explaining that "Allstate has

completed its investigation."  In his letter, Mr. Riede acknowledged that Allstate's investigation

revealed that "rain water had entered through gaps in the exterior trim construction of the building

corners damaging the exterior gypsum sheathing underneath."  Riede letter, p. 2.  Mr. Riede also

explained that Allstate's engineer, Mark Uchimura, "has advised that the water which damaged the

gypsum sheathing was from rain."  Mr. Riede went on to explain that he had reviewed the

Association's records "in an attempt to assist Pacific Engineering in timing when the rain water

damaged the gypsum sheathing."  *Id.* at p. 2.  After citing irrelevant Association records regarding

unrelated problems—plumbing leaks and condensation, roof leaks, and rot at ground floor decks—

Mr. Riede concluded that the water damage to sheathing and framing at the exterior corners "likely

occurred within the first five years of the building's existence . . . ."  *Id.* at 12 (emphasis added).

Thus, Mr. Riede denied coverage on the ground that the damage to sheathing and framing at

exterior corners occurred "before Allstate insured the risk."

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 5

4.10   <u>Tolling Period</u>.  From 2012 through 2019 the tolling agreement operated to prevent the running of any contractual or statutory limitations periods.  Both the Association and Allstate chose not to terminate the tolling agreement during this time period.

4.11   <u>Second Tender to Allstate</u>.  On May 21, 2019, the Association wrote to Allstate to ask it to reevaluate and reconsider Allstate's denial.

4.12   <u>Allstate's Second Denial</u>.  On June 17, 2019, Allstate responded by declining to reevaluate and reconsider its coverage determination.  Allstate took the position that "the coverage decision was reasonable and correct."  Allstate also took the position that, although the tolling agreement had never been terminated, "the tolling agreement is no longer in effect."  Allstate made no attempt to explain how, when, where, or why the tolling agreement ended without either party ever having terminating the agreement.

4.13   <u>IFCA Letter to Allstate</u>.  On June 26, 2019 the Association wrote to Allstate pursuant RCW 48.30.015, the Insurance Fair Conduct Act ("IFCA") to explain why Allstate's coverage denial was unreasonable and to ask Allstate to cure its IFCA violations within twenty days.  The IFCA letter explained why Allstate's policies should be interpreted to cover the hidden water damage at Midlakes.  The letter also explained that Allstate's coverage denial was unreasonable because:

    a.   Allstate failed to conduct a reasonable investigation before deciding that no damage occurred during its policy periods.

    b.   Allstate's engineer, Mark Uchimura, asked for access to the Association's files regarding prior maintenance and repairs, which he believed would be relevant to his opinion regarding when damage occurred.  Allstate had access to all of the Association's files, but Allstate failed to provide Mr. Uchimura with the records that he had requested.  Thus, Mr. Uchimura was unable to complete his investigation or form an opinion regarding when damage occurred.

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 6

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

c. Allstate relied upon its advocate, attorney Robert Riede, to review the Association's files and form an opinion regarding when the hidden water damage occurred.  Mr. Riede is an attorney, not an architect or engineer.  It was not reasonable for Allstate to rely upon Mr. Riede's opinion regarding when damage occurred.  Allstate should have provided Mr. Uchimura with the Association's records regarding maintenance and repairs and should have asked him to provide an opinion regarding when damage occurred.

d. Instead, Allstate unreasonably adopted Mr. Riede's conclusion that all of the damage that was exposed to view in 2010 and 2011 had occurred between 1978 and 1983 (before Allstate issued its first policy in October 1983).  In other words, Allstate unreasonably accepted Mr. Riede's argument that the hidden water damage must have stopped 28 years before the 2011 investigation.  Mr. Riede's argument was advocacy for Allstate, not as a neutral decision based upon investigation and evidence.  Mr. Riede's argument is not supported by any reasonable evidence or investigation.

e. Allstate had a duty to investigate and evaluate the claim as a neutral decisionmaker treating the Association's interests as equal to Allstate's interests.  Instead, Allstate allowed its legal advocate, coverage attorney, Robert Riede, of Wilson Smith Cochran Dickerson, to investigate, evaluate, and decide the Midlakes claim.

4.13    <u>Notice of Termination of the Tolling Agreement</u>.  On June 27, 2019 the Association provided written notice that it was terminating the tolling agreement effective July 27, 2019.

4.14    <u>Allstate's Response to the IFCA Letter</u>.  In response to the Association's IFCA letter, Allstate should have allowed its engineer to complete his unfinished investigation, review the Association's files, and provide an opinion regarding when the hidden water damage at Midlakes occurred.  Likewise, Allstate should have asked an adjuster to reevaluate and reconsider the claim, treating the Association's interests as equal to Allstate's interests.  Instead, on July 16, 2019,

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 7

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

Allstate responded by refusing to perform any additional investigation or to reevaluate or reconsider the claim.  Moreover, Allstate ignored the IFCA letter's description of why its investigation and coverage decision were unreasonable.  Allstate did not even mention any of the specific arguments, facts, questions, or concerns raised in the IFCA letter.  Instead, without any analysis or explanation, Allstate simply ratified and reaffirmed that Mr. Riede's conclusions were "reasonable and correct."

4.15    <u>Actual Termination of the Tolling Agreement</u>.  On July 27, 2019 (thirty days after the Association's notice of termination) the tolling agreement terminated.  Thus, the tolling agreement was in effect from March 11, 2011 to July 27, 2019.  Pursuant to the terms of the tolling agreement, "[f]or purposes of any contractual suit limitation period, statute of limitations, or other timeliness defense, a suit filed by the Association against Allstate within ten days of actual termination of this agreement shall be treated as if it had been filed on March 11, 2011."  July 27, 2019 was the date of actual termination.  This lawsuit was filed within ten days of July 27, 2019.  Thus, pursuant to the terms of the tolling agreement, for purposes of any contractual suit limitation period, statute of limitations, or other timelines defense, this lawsuit must be treated as if it had been filed on March 11, 2011.

4.16    <u>Allstate's Coverage Decision was Unreasonable</u>.  Allstate's policies provide coverage if any part of the incremental hidden water damage, however minute, occurred during any of the seventeen years during which it insured Midlakes.  Allstate denied coverage based upon the false and unreasonable speculation—without a reasonable and adequate investigation—that no water intrusion or water damage occurred during its policy periods, even though wind-driven rain hit the buildings, and entry points for rainwater intrusion were present, during all seventeen of its policy periods.  Allstate falsely and unreasonably concluded that all entry points allowing rainwater intrusion near exterior corners were caulked in 1983.  Allstate's conclusion that no rainwater intrusion or damage occurred during the 28 years between 1983 and its investigation in 2011 was false, unreasonable, and inconsistent with the evidence that: (a) the CDI investigation in 2010 uncovered wet sheathing and framing, and (b) some of the entry points that allowed rainwater

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 8

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

1  intrusion near the exterior corners have never been caulked or sealed at any time since original

2  construction.  Thus, it is likely that rainwater intrusion and incremental water damage have

3  occurred each year since original construction.

## V.    FIRST CLAIM: DECLARATORY RELIEF THAT ALLSTATE'S POLICIES PROVIDE COVERAGE

6      5.1    Incorporation by Reference. The Association re-alleges and incorporates by

7  reference the allegations of paragraphs 1.1 through 4.9 above, as if fully set forth herein.

8      5.2    Declaratory Relief.  The Association seeks declaratory relief from the Court in the

9  form of determinations regarding the following disputed issues:

10    a.  The Allstate Policies are all-risk policies covering every risk, peril, cause, and loss not

11        excluded. The Allstate Policies identify the Midlakes buildings as covered property.

12        The Midlakes buildings were damaged during the Allstate policy periods.  Specifically,

13        the exterior sheathing and framing were damaged by rainwater intrusion.  This damage

14        was hidden behind the building envelope and could not be observed without removing

15        siding.  No exclusions, conditions, or limitations bar coverage for the water damaged

16        exterior sheathing and framing at Midlakes.

17    b.  As a result, the Allstate Policies cover the cost of repairing the water damaged exterior

18        sheathing and framing at Midlakes.

19    c.  Allstate's policies contain no temporal restrictions regarding when damage must occur

20        in order to be covered.  The hidden water damage at Midlakes occurred incrementally

21        and progressively as a result of rainwater intrusion over a period of many years. Some of

22        the incremental hidden water damage occurred during each of Allstate's policy periods.

23        Thus, Allstate's policies cover the cost of repairing all of the incremental hidden water

24        damage.

25    d.  From October 20, 1983 to October 20, 1985, Allstate's policies contained a "water

26        damage endorsement," which provided that, "this policy is extended to cover loss caused

27

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 9

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

by or resulting from: . . . 3. Rain . . . entering the building(s) through openings in the roof or walls."  Some of the incremental hidden water damage at Midlakes resulted from rain entering through openings in the roof or walls between October 20, 1983 and October 20, 1985.  Thus, Allstate's policies cover all of the incremental hidden water damage at Midlakes.

e.  Pursuant to the terms of the tolling agreement between the Association and Allstate, for purposes of any contractual suit limitation period, statute of limitations, or other timelines defense, this lawsuit must be treated as if it had been filed on March 11, 2011.

## VI.   SECOND CLAIM: AGAINST ALLSTATE FOR BREACH OF CONTRACT

6.1   <u>Incorporation by Reference</u>. The Association re-alleges and incorporates by reference the allegations of paragraphs 1.1 through 5.2, above, as if fully set forth herein.

6.2   <u>Contractual Duties.</u> Allstate has contractual duties under the terms of its respective policies to pay the cost of repairing the covered damage to the Midlakes buildings.

6.3   <u>Breach of Contract.</u> Allstate has failed to fulfill its contractual obligations to the Association.

6.4   <u>Damages.</u> As a direct and proximate result of Allstate's breach of its insurance contracts, the Association has been suffered damages in an amount to be proven at trial.

6.5   <u>Additional Damages</u>.  As a direct and proximate result of Allstate's breach of its insurance contracts, the Association has been forced to incur attorneys' fees, expert costs, investigation costs, and other expenses in order to prosecute this action, the sole purpose of which is to obtain the benefits of the Association's insurance contracts.  The Association is entitled to recover these fees and costs.

## VII.   THIRD CLAIM: AGAINST ALLSTATE FOR INSURANCE BAD FAITH

7.1   The Association re-alleges and incorporates by reference paragraphs 1.1 through 6.5, above, as if fully set forth herein.

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 10

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

7.2     The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. RCW 48.01.030. An insurer has a duty to act in good faith. This duty requires an insurer to deal fairly with its insured. The insurer must give equal consideration to its insured's interests and its own interests, and must not engage in any action that demonstrates a greater concern for its own financial interests than its insured's financial risk. An insurer who does not deal fairly with its insured, or who does not give equal consideration to its insured's interests, fails to act in good faith. *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 150 Wn.2d 462, 470, 78 P.3d 1266 (2003).

7.3     The duty of good faith requires an insurer to conduct a reasonable investigation before refusing to pay a claim submitted by its insured. An insurer must also have a reasonable justification before refusing to pay a claim. An insurer who refuses to pay a claim, without conducting a reasonable investigation or without having reasonable justification, fails to act in good faith. *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 961 P.2d 933 (1998); *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 792 P.2d 520 (1990).

7.4     Allstate had a duty to investigate, evaluate, and decide the Association's claim in good faith.  Allstate breached its duty by unreasonably investigating, evaluating, and denying the claim.

7.5     A violation, if any, of one or more of the Washington claim handling standards set forth below is a breach of the duty of good faith, an unfair method of competition, an unfair or deceptive act or practice in the business of insurance, and a breach of the insurance contract. Allstate violated Washington claim handling standards by, among other things:

- Refusing to pay the Association's claim without conducting a reasonable investigation;
- Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
- Misrepresenting pertinent facts;

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 11

- Failing to provide its engineer with the information he had requested (the Association's maintenance-and-repair records) in order to form an opinion regarding when rainwater intrusion and damage occurred;

- Failing to identify the entry points where rainwater intrusion occurred that resulted in damage to sheathing and framing at the exterior corners;

- Failing to disclose that some of the entry points where rainwater intrusion occurred at exterior corners have never been caulked or sealed;

- Failing to disclose that wind-driven rain entered the exterior walls each year through uncaulked and unsealed entry points near the exterior corners;

- Failing to investigate or determine when one potential entry point near exterior corners was caulked;

- Failing to promptly provide a reasonable explanation of the basis for the denial of a claim;

- Failing to treat the Association's interests as equal to its own when investigating, evaluating, and deciding the claim;

- Allowing attorney Robert Riede to investigate, evaluate, and decide the claim, and ratifying rather than reevaluating and correcting Mr. Riede's conclusions, which were based upon zealous advocacy for Allstate rather a neutral evaluation;

- Misrepresenting that no rainwater intrusion or damage occurred between 1983 and 2011 when the CDI report provided clear evidence that some of the rainwater intrusion and damage occurred in 2010.

- Misrepresenting that rainwater intrusion and damage occurred from 1978 to 1983, and then stopped in 1983, when there is no evidence of any event or change in 1983 that would have prevented rainwater intrusion or damage from occurring after 1983.

7.6     As a direct and proximate result of Allstate's breach of its respective duties of good faith the Association has been damaged in an amount to be proven at trial.

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 12

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

## VIII. FOURTH CLAIM: AGAINST ALLSTATE FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT

8.1     The Association re-alleges and incorporates by reference paragraphs 1.1 through 7.6, above, as if fully set forth herein.

8.2     Violations of WAC claim handling standards are per se Consumer Protection Act ("CPA") violations. Allstate's conduct was deceptive, impacted the public, and had the capacity to deceive. The Association is a consumer.

8.3     Allstate has a pattern and practice of unreasonably refusing to pay covered claims for water damage to other condominium buildings in Washington.

8.4     As a direct and proximate result of Allstate's CPA violations, the Association has been damaged in an amount to be proven at trial. The Association is entitled to damages, CPA penalties of up to $25,000 per violation, and attorneys' fees under the CPA.

## IX.     FIFTH CLAIM: AGAINST ALLSTATE FOR NEGLIGENCE

9.1     The Association re-alleges and incorporates by reference paragraphs 1.1 through 8.4, above, as if fully set forth herein.

9.2     Allstate had a duty to comply with Washington insurance regulations and statutes, and to exercise reasonable care when investigating, evaluating, and deciding the Association's claim.

9.3     Allstate breached its duties by negligently failing to exercise reasonable care and by failing to comply with Washington insurance regulations and statutes when investigating, evaluating, and deciding the Association's claim.

9.4     As a direct and proximate result of Allstate's breaches the Association has been damaged in an amount to be proven at trial.

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 13

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

## X.     SIXTH CLAIM: AGAINST ALLSTATE FOR VIOLATIONS OF THE INSURANCE FAIR CONDUCT ACT ("IFCA")

10.1    The Association re-alleges and incorporates by reference paragraphs 1.1 through 9.4, above, as if fully set forth herein.

10.2    The Association is a first party claimant.  Allstate unreasonably investigated, evaluated, and denied the Association's claim.  Allstate acted unreasonably in denying the Association's claim.  Allstate violated one or more of the rules set forth in WAC 284-30.

10.3    More than twenty days prior to filing this action the Association provided written notice to both Allstate and the office of the insurance commissioner of the basis for this cause of action.  Allstate failed to resolve the basis for this action within twenty days of the Association's written notice.

10.4    As a direct and proximate result of Allstate's violations of the IFCA statute (RCW 48.30.015) (including its failure to cure its unreasonable denial and violations of WAC claim-handling standards) the Association has been damaged in an amount to be proven at trial.  The Association's actual damages include, but are not limited to, the cost of repairing the covered damage to the Midlakes buildings.

10.5    Pursuant to RCW 48.30.015(3) the Association is entitled to an award of reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees.  Pursuant to RCW 48.30.015(2), the court "may" and should increase the Association's total award of damages to an amount equal to three times actual damages.

## XI.     PRAYER FOR RELIEF

WHEREFORE, the Association prays for judgment as follows:

11.1    Declaratory Judgment Regarding Coverage. A declaratory judgment that the Allstate Policies provide coverage as described herein.

11.2    Money Damages. For money damages in an amount to be proven at trial.

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 14

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

11.3 <u>Attorneys' Fees and Costs of Suit.</u> For reasonable attorneys' fees, investigation costs, expert witness fees, and other costs associated with this lawsuit.

11.4 <u>CPA Penalties</u>.  For CPA Penalties of up to $25,000 per violation.

11.5 <u>IFCA Damages</u>.  For IFCA damages pursuant to RCW 48.30.015(2) that are double the amount of actual damages.  Adding the IFCA damages to the Association's actual damages will increase the Association's total award of damages to an amount equal to three times actual damages.

11.6 <u>Other Relief</u>.  For such other and further relief as the Court deems just and equitable.

## XII.   DEMAND FOR JURY TRIAL

12.1 Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Association demands trial by jury in this action of all issues so triable.

DATED this 1st day of August 2019.


HOUSER LAW, PLLC


*/s/ Daniel Houser*
Daniel Houser, WSBA 32327
Attorney for Plaintiff
1325 4th Avenue, Suite 1650
Seattle, WA 98101
Email: dan@dhouserlaw.com
Telephone: (206) 962-5810

COMPLAINT FOR DECLARATORY
RELIEF, BREACH OF CONRACT, BAD
FAITH, NEGLIGENCE, AND IFCA AND CPA
VIOLATIONS - 15

HOUSER LAW, PLLC
1325 4th AVENUE, SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810